All right. We have two cases on today's docket for oral argument. The first is cause number 22-10452 United States of America v. Philip Matthew Sinclair. Clear or fake? All right. You may proceed. May it please the court. As I said, I'm Camille Knight on behalf of the appellant in this case. This is the second time this case has been before the court. The first time, the court found that the findings made by the district court were not supported by sufficient facts in the pre-sentence report or the pre-sentence report addendum. This court found that Mr. Sinclair was a drug supplier to one of the people who were arrested on a certain date in Cook County, Texas. But the court found that there was no evidence of any temporal proximity between Mr. Sinclair's sale and the weapon found at the residence and no evidence that Mr. Sinclair, that the sale from Mr. Sinclair to the other people at that house happened near in time. Furthermore, on that date, another person, Mr. Ilcizen, distributed methamphetamine to Mr. Wood. Mr. Wood's house was where everyone was arrested. This court found that there was no evidence that Mr. Sinclair assisted in that sale. On remand, the district court essentially copied the dissent from the original opinion. It adopted findings in the second pre-sentence report addendum, which didn't have any new facts in it. It has no indication that any new investigation was done in support of the information in the pre-sentence report addendum. It mostly discussed the court's opinion in the first round and then changed the wording slightly. The remand was to determine whether this firearm enhancement applied and it required the district court to state its basis for its determination. In the second pre-sentence report, suddenly for the first time, the words that the gun at the residence on the date of arrest was in plain view appear. Again, there's no indication that any further investigation was done for the second pre-sentence report addendum. The government adopted the addendum and stated it had no further facts to supply to the district court. This statement in the pre-sentence report addendum, without a source, without an indication that additional investigation was done, seems to be a bold, conclusory statement. Then the district court seems to have latched onto this change in this wording in the second addendum, saying that while the pre-sentence report initially said that the gun was on a table near the couch, the district court's findings and conclusions, which were issued before the resentencing hearing, said that the gun was in easy access of all. That's not in the PSR. The findings and conclusions stated that Mr. Sinclair had, quote, clear knowledge of and access to the weapon and had immediate access to it because it was in plain view. None of this information is in the original pre-sentence report or the first addendum. The district court went further by saying that Mr. Sinclair was likely in knowing participation in the transaction that this court found there was no indication that he assisted. And then the further literary license in the findings and conclusions was that Mr. Sinclair was present at Mr. Woods' home during and after the transaction. Was that finding that he was a knowing participant in the initial sentencing? It is not, Your Honor. The pre-sentence report doesn't say exactly when the transaction occurred. It states that Sinclair was present when Ilcizin distributed methamphetamine to Woods. There were five people at the house. When they were arrested by sheriff's department deputies, there were five people. The original pre-sentence report says they were sitting in the living room smoking methamphetamine. By the time we get to the second addendum, they were sitting on a couch. The first pre-sentence report says that the gun was on a table in the living room or near the couch. And then when we get to the second addendum, it says that the gun was in plain view. So the district court further found that Sinclair was present at the sale of the methamphetamine he supplied to Ilcizin, which is not in the PSR, and then further determined that the transaction between Ilcizin and Woods occurred in the residence and probably in that very room with an easily accessible handgun almost surely present for the protection of the smoker slash conspirators, which, again, does not appear in the pre-sentence report or the first addendum. There's, in fact, no evidence in the pre-sentence report of the timing of the transaction or the location of the transaction between Ilcizin and Woods, and the people caught smoking methamphetamine in that house were not charged as conspirators. And the government could have provided additional information to the district court to account for these differences in the pre-sentence report and the first addendum and second addendum, but it chose not to, as opposed to in the first pre-sentence report when the defendants' counsel filed objections, the government attached 45 pages of investigative reports in its response. There is no investigative report about the sheriff's department arresting these five people on that day. The government argues that the district court clearly found that Mr. Sinclair was in personal possession of the firearm. We contend that the district court's findings are a little on both sides because the district court talked about the drug transaction and relevant conduct and how it would have been foreseeable for a gun to be there. And if that's the case, if that's what the district court is relying on as a co-conspirator possession theory, then it seems like there were five people smoking methamphetamine, there was a gun somewhere on a table, unclear exactly where, but Mr. Sinclair was there on one side of the transaction. Mr. Wood, who the district court ultimately found the gun belonged to, was on the other side of the transaction. So if it's a co-conspirator possession theory, then I don't understand why Mr. Wood on the other side of the transaction would allow Mr. Sinclair access to the gun. As opposed to if the gun was just sitting out in plain view of all as home decor or a party favor, the question becomes, is the gun related to the drug transaction at all? Or is this just a social visit, as Mr. Sinclair initially contended? So essentially what our argument is, is that the district court used the same pre-sentence report, the same pre-sentence report addendum, issued findings before the evidentiary hearing at the resentencing, and based its findings on the same facts that this court held were not sufficient to support either theory of possession. Furthermore, at the resentencing, after the findings and conclusions were issued, Mr. Sinclair presented evidence of an eyewitness to the occurrences on the date at this home, who stated that she herself did not see a gun. She would not expect the gun to have been there. Neither of Mr. Sinclair nor her had ever been there before, so there was no reason to believe a gun would be there. The government has argued that Mr. Sinclair made some kind of concession about facts being sufficient to support the district court's findings below. We disagree with that. That statement was merely a statement of the law, stating that this court's precedent allows a district court to make findings based on one theory or the other theory. And indeed, the district court had already made findings when that statement was made, issued its findings before taking evidence, and then in support of its ruling, adopted the very same findings. Let me ask you one thing. You've got a Rule 32.1b violation that you're asserting, which we review under plain error. Can you point to a portion of the briefing that would help us clarify this issue on substantial rights? Yes, Your Honor. If the court is asking what standard of review we believe applies, we believe it's de novo in the first instance, because the district court needs to, when this court is reviewing whether there are sufficient facts to support a district court's findings, the review is de novo. But otherwise, at the sentencing hearing, after having presented evidence of the eyewitness sworn testimony, the district court did not make a ruling on the disputed facts. So there's findings that are issued before the hearing. There's evidence at the hearing. The district court did not comment on that evidence or make a ruling on the disputed facts. The government will say that the court made an implicit ruling in its finding that the enhancement applied. But in total, I think it goes to substantial rights and Mr. Sinclair's prejudice. When the court remands the case because there are insufficient facts, the district court just says, oh, yes, there are, and then doesn't take into account the testimony presented at the sentencing hearing. Well, that brings up another question. How many bites at the apple should Judge Means have? Because he's a great judge and a long experience, but he's had two bites at this apple, and he's answered it the same way both times. Is it your position that we should remand and assign it, have the chief judge assign it to a different judge this time? I think that would be up to the court, Your Honor. I agree with you. Judge Means is a great judge. I think that his findings issued before the evidence was presented at the resentencing is troublesome, but I don't want to suggest the remedy that this court deems appropriate. Okay. Thank you. If there are no further questions, I'll reserve the rest of my time. All right. Thank you, counsel. You may proceed. May it please the Court, Ryan Niedermeyer for the United States. I think it's important to keep in mind where this case was when it originally came up to the court before the remand. Initially, the PSR advised that a 2D1.1 enhancement should apply based off of evidence from Cook County Sheriff's Office investigation. There was no further discussion of that enhancement at sentencing. There was a little bit of discussion and written objections to the court, but the district court didn't make any additional findings or inferences outside of what was in the PSR. It simply adopted the PSR at sentencing and imposed the enhancement. Now, this court said and this court explained that because it was unclear which possession theory the court had applied, whether it was personal possession or co-conspirator possession, which was reasonably foreseeable to Mr. Sinclair, that the district court needed to explicitly state its reasons for imposing the enhancement and make the necessary findings. And that's where we are now. The district court made additional findings and inferences from those findings that this court now reviews for clear error in finding that Mr. Sinclair personally possessed the firearm. What are those new findings? Yes, Your Honor. The new findings are, one, that Sinclair sold meth to a citizen who distributed it to Wood that day that they were all arrested as part of the conspiracy to which he pled guilty. That was the new finding, one. Two was that Sinclair was at Wood's house so that Ilcizian could further distribute meth to Wood, and that came directly from the PSR. The PSR said that Sinclair and Ilcizian went to Wood's house with Sinclair's girlfriend. I agree with you that that's in the PSR, but what support is there for that finding in the PSR? The investigative reports that the PSR relied on in that Mr. Sinclair did not rebut their reliability whatsoever. But in the addendum to that report, didn't the probation officer or whoever was in charge of the PSR specifically say that they didn't have evidence to support that he was there for the purpose of participating in a transaction? I don't recall seeing that exact concession in the PSR addendum, Your Honor. The addendum itself didn't discuss in great detail that, I guess, the purpose of them being in the house. It was discussing a little bit about the co-conspirator possession theory and the personal possession theory. But in any event, the district court also found that the Woods transaction was part of Sinclair's relevant conduct. That was a finding that was never discussed before, that this court didn't consider on the first appeal. At page 383 of the record, it says that there is no evidence that Sinclair engaged in drug transactions at Woods residence or that he assisted in any transactions. And I believe that that addendum to the PSR was adopted without objection. I see that, Your Honor, and I apologize. That's the second addendum after remand. I do see that, Your Honor, and I read that as explaining this court's previous findings of how the record pulled both ways. I didn't read that as the PSR saying definitively there was no evidence. I read that in the context of both paragraphs as simply explaining to the district court this is what the Fifth Circuit found wanting. Now, and I think— When you say this is what the Fifth Circuit found wanting, what are you specifically referring to? I'm specifically saying that this court highlighted that the record pulled both ways as to the purpose of Sinclair being at Woods' house that day. So you seem to be saying that the only finding was in Sinclair 1 was that it was just unclear which determination what the district court relied on. Yes, Your Honor. But I'm reading from Sinclair 1 where it says the PSR and its addendum do not provide enough facts to support a finding that Sinclair was engaged in a drug trafficking conspiracy. That's what it says. So it's not just saying it's unclear. It's making a determination that there were insufficient facts to make that finding. Isn't that what Sinclair 1 says? That is what it says, Your Honor. But I think the—I again think that that was the court explaining what was wanting here because if the court—if Sinclair 1 truly believed that there was no evidence to show that Sinclair was at all involved in this transaction, it wouldn't have remanded to the district court to make additional findings. It could have told the district court we're going to remand for resentencing, and this enhancement doesn't apply. We said when we sent it back that the district court should make the—and I'm quoting here—make the appropriate findings and state plainly the basis for its decision. Now, the findings in conclusion states two bases for the enhancement and seems to describe them interchangeably. How is this in accordance with our mandate? Your Honor, I believe that in the district court's tentative findings, its eight-page findings, it made clear that it was implying personal possession to Mr. Sinclair. The only talk about someone else possibly owning the gun was simply acknowledging that there wasn't evidence that Sinclair himself owned the gun, but Sinclair had constructed possession over that firearm because he had knowledge and access to it. And as this court knows, constructive possession is part of personal possession. So I believe the district court made clear that it was applying the enhancement based off of personal— I didn't see anything the second time that was added to the first time. Well, Your Honor, I respectfully disagree with that. I think there are a couple of things. One, the constructive possession finding, that was new. That was not something that the district court previously found. Then also, again, this idea of relevant conduct, that Sinclair's presence at Woods' house that day was relevant conduct, which is backed, by the way, by two points. One is that the PSR didn't attribute the meth found at Woods' house to Sinclair out of fear of double counting. And two, Sinclair himself pled guilty to possession with intent to distribute a controlled substance the day that he was arrested at Woods' house. And he got a sentencing benefit out of that because the district court ran his federal conspiracy sentence concurrently with his state charge and gave him credit for time he had served on the state charge before the federal sentence. So I think that gets to the point of this idea that it was a social gathering and that there was no evidence that Sinclair was there as part of a meth amphetamine transaction deal flies in the face of this record when he, in fact, did plead guilty to a state drug charge after being arrested that day. So because the district court found that Sinclair was at Woods' house to help his citizen further distribute meth to Woods, or was at least there as part of his relevant conduct because he did supply the methamphetamine that ill-citizen used to supply Woods, shows a temporal relationship between Sinclair's drug trafficking activity and the firearm that was in the house. I do want to note this Ms. Knight's talk about the plain view of this gun. There was testimony at the sentencing hearing that this firearm was found in an efficiency house. It was a one-bedroom house. So the idea that the drug transaction and the firearm happened in the same room is perfectly reasonable when you look at this record, and it certainly was not clearly erroneous to make that finding. And Mr. Sinclair admitted that there was a gun in that house, and he admitted that a transaction occurred in that house. And again, we're not talking about a mansion. We're talking about an efficiency house here. So based off of the record as a whole, which this court reviews the district court's findings on, there was no clear error in finding that there was a temporal and spatial relationship between Sinclair, his drug trafficking activity, and the weapon. And that's because the government showed that a gun was found in the same place where a drug transaction occurred. That gets us to the preponderance of the evidence. Sinclair has to rebut that by showing it was clearly improbable that the firearm was connected to the offense. But how do we look at it the second time up and see any difference in what the district judge did the first time and the second time? Your Honor, the district court's tentative factual findings lays out that it is applying a personal possession theory to Mr. Sinclair. So it did what this court wanted it to do. It stated plainly, I'm applying this enhancement because Sinclair personally possessed the firearm. And then it went into detail additional findings of fact based off the PSR and additional inferences based off of those facts that show a temporal and spatial relationship between Sinclair and the firearm. Now, I believe that the talk of whether the district court had used co-conspirator reliability with reasonable foreseeability. I read that as a district court discussing relevant conduct. Why it could have imposed this firearm through a relevant conduct analysis. Not that it was imposing the firearm enhancement because a co-conspirator possessed the weapon and that it was reasonably foreseeable to Sinclair. Now, Judge Weiner did ask about the Rule 32 challenge here. It is reviewed for plain error. Sinclair did not object to that below and he was required to. And because it's reviewed for clear error, Sinclair has to show that his substantial rights were violated. And he didn't do that either in the briefing or here today. But this court doesn't have to find that his substantial rights weren't affected to find that there was no Rule 32 error. There wasn't a Rule 32 error. The district court heard testimony and after it heard testimony, it adopted its tentative findings as final and adopted the PSR. And by doing that, it implicitly rejected any sort of conflict that Blackman's testimony caused in the record. And because it didn't leave this court second-guessing the basis of its sentencing decision, it didn't leave this court second-guessing whether or not it had taken into consideration Blackman's testimony, there was no Rule 32 error, period. But even if there was, Sinclair has not found that his substantial rights were violated. Can you make it real clear for me what you contend is the basis for the district court's finding on remand with regard to the two-level firearm enhancement? What did the district court find? The district court found, one, that Sinclair sold meth to Asilzian as part of his federal conspiracy. That was not originally found. Two, that Sinclair was at Woods' house so that Asilzian could further distribute meth to Woods. And made an inference based off of that finding that Sinclair was present and a likely knowing participant between the transaction between Asilzian and Woods, because he was the ultimate supplier. But that's not the co-conspirator theory. No, well, Your Honor, I'm sorry. The co-conspirator theory is not because the district court isn't saying that the weapon was possessed by a co-conspirator and that was reasonably foreseeable. That finding is about the temporal proximity between Sinclair's drug trafficking activity and the firearm found at Woods' house. So that finding is about temporal proximity and spatial proximity because that transaction occurred in the house, which, again, the district court made clear on remand, which this court found not clear earlier. And then the district court also explained that even if the drug transaction between Asilzian and Woods was not part of Sinclair's federal conspiracy, it was relevant conduct that the court could consider when it was sentencing Sinclair for the federal conspiracy. And then that is where the district court talks about a jointly undertaking criminal activity. It's talking about that in the context of relevant activity, sorry, relevant conduct, which again goes towards the temporal relationship between Sinclair's drug activity and the firearm, not about the possession of the firearm. And as far as Sinclair's himself, his temporal and spatial relationship with the firearm, the district court made clear on remand that was not clear before that the gun was constructively possessed by Sinclair, that Sinclair had knowledge and access to the weapon because it was on a table next to a couch where he was smoking methamphetamine when police arrived. And it's, again, a one-bedroom house. This isn't a situation where the gun is in Woods' dresser drawer and Sinclair would have no idea that it was there. It was out on a table where everyone was smoking methamphetamine and had access to that. So everybody in the room that time was possessing the firearm under your theory? Not only under my theory, under this court's theory. This court has said that ownership of a firearm doesn't matter when we're talking about the gun enhancement. We're talking about knowledge and access to the firearm. So all three would have? Yes, Your Honor. If they, all five people, if they had been charged with Sinclair in this federal conspiracy, they would have constructive possession of that weapon. And that also goes towards the policy of this guideline. Drugs and guns are bad when they mix. And we apply the enhancement because we impose an extra danger to drug trafficking when a firearm is present. So the seller and the buyer are in constructive possession of the same weapon? Yes, Your Honor. But everyone has knowledge and access to it. And that's, that would be, and again also this court has held too, we're also talking about a different standard when we're talking about this enhancement, right? We're not talking about possession in the way that could be proven for an independent firearm offense. We're talking about knowledge and access to the firearm for enhancement. And this court has said that it's per se permissible to enhance a defendant's sentence when that firearm is present. And again, that's different than charging everyone in that room with being, you know, a known drug user in possession of a firearm. I'm not saying that that standard would apply, you know, for an independent firearm charge. But under the sentencing guidelines, it certainly would be enough for everyone to get hit with that enhancement if they were federally charged. Let me ask you the same question I ask opposing counsel. If we were to decide that this needed to go back again, should we ask the chief judge of the district to appoint a different judge? No, Your Honor. I believe Judge Means did what this court asked him to do. He plainly stated the basis for it. Well, but if we disagree with you. Yes, Your Honor. I'm sorry. I think what I mean by that point is if this court does send it back with a new remand and new instructions, there's nothing in this record to show that Judge Means will not faithfully apply that remand as he did in this case. So he gets three bites at the apple. Yes, Your Honor. Thank you. If there's nothing further from the court, I'll cede the rest of my time. Thank you, counsel. Rebuttal. Thank you, Your Honor. The court asked whether under the personal possession theory, whether all five of the people arrested in that house that day would have possession of the firearm. And I don't think that you can say that that's true. Ms. Blackman testified that she did not know the firearm was there. She said she never saw a firearm. She never expected a firearm to be there. And the district court asked her whether she was looking for one, and she admitted that she was not. But even in an efficiency apartment, you have a table in front of you. I can't see everything that's on it. It's not like there's a big neon sign that says there's a gun here and you have access to it. So I think that the problem goes back to this court's initial finding, which is there were not sufficient facts in support of the enhancement. There's something missing. Under the personal possession prong, what's missing is that while Sinclair was there, according to the pre-sentence report and addendum, he was not part of any transaction between Il Sizin and Wood. We don't know whether that transaction occurred when everyone had arrived or before everyone had arrived or whether the transaction was out in the front yard or in the home. We're just not clear on that. So the court's initial opinion that Sinclair's participation in drug distribution was remote to the gun, I think, is more accurate than any of the other theories that the government has come up with. In terms of the methamphetamine being similar, it doesn't help. It doesn't help the government. So Mr. Sinclair distributed methamphetamine to Mr. Silzen three weeks ago, and then Mr. Silzen says, hey, stop by Mr. Wood's house because we're going to get together. And Sinclair says, oh, great. And even if Wood said, and also I'm going to give him an ounce of methamphetamine, or if Il Sizin said that, it doesn't mean that Sinclair is participating in this or helping to make sure that it happens. The government several times referred to the district court's findings and conclusions as tentative. They were not titled tentative. They were filed in advance of the resentencing hearing, and those were the same findings that the district court relied on to support the application of the enhancement, which in turn relied on information that was not in the PSR, was not in the addendum, and we contend was not in the second addendum either, or reliably so. So what we go back to is that there are still not sufficient facts in support of applying the enhancement. And finally, as to substantial harm to Mr. Sinclair, I don't think that anyone in this room has filed findings and conclusions before taking evidence on the issue that it's supposed to be finding on. So the filing of the findings and conclusions before the hearing speaks not only to the perception of fairness to Mr. Sinclair, but actual fairness. If it was a situation where Judge Means had made his decision and nothing that Mr. Sinclair could have presented was going to move him off of that, then that does affect his substantial rights. And if the court has no further questions, I thank you. Thank you, counsel. The court will take this matter under advisement. We call the next case.